```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
MARTIN TREPEL,                           :
                                         :
                    Plaintiff,           :    04 Civ. 8310 (DLC)
                                         :
           -v-                           :    OPINION AND ORDER
                                         :
KAREN DIPPOLD, an individual, BELDOCK,   :
HOFFMAN AND LEVINE, a New York Co-       :
Partnership; and HODGSON RUSS, a New     :
York Co-Partnership,                     :
                                         :
                    Defendants.          :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:

Joshua Denbeaux
Denbeaux & Denbeaux
366 Kinderkamack Road
Westwood, New Jersey 07675

For Defendants Karen Dippold and
Beldock Levine & Hoffman, LLP:

Ronald C. Minkoff
Madhu R. Goel
Frankfurt Kurnit Klein & Selz, P.C.
488 Madison Avenue, 9th Floor
New York, New York 10022

DENISE COTE, District Judge:

The plaintiff, Martin Trepel ("Trepel"),[1] was the plaintiff in a prior federal civil action for fraud in this District against an African art dealer, Mourtala Diop ("Diop"). Trepel obtained a default judgment against Diop, but has seen only a

---

[1] Trepel is a resident of Virginia; the defendants are residents of New York.

fraction of the total judgment satisfied because Diop fled the District with most of his possessions and has not been located. Trepel has filed suit against Diop's counsel, Karen Dippold ("Dippold"), Dippold's law firm, Beldock Levine & Hoffman, LLP ("Beldock Firm"),[2] and Trepel's own law firm in the Diop litigation, Hodgson Russ LLP ("Hodgson Firm"), alleging among other things that Dippold frustrated a restraining order by intentionally facilitating Diop's removal of his valuable art possessions from the District and depriving Trepel of the opportunity to recover his damages. Dippold and the Beldock Firm have moved to dismiss the action for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the following reasons, the motion is denied.

**BACKGROUND**

The following facts are taken from the allegations contained in the Complaint, unless otherwise noted. Trepel filed suit against Diop in 2002 in the United States District Court for the Southern District of New York for fraud stemming from Diop's sale of fake antique African tribal artwork to Trepel. The New York District Attorney subsequently filed criminal charges against Diop. Dippold and the Beldock Firm represented Diop in both the criminal and civil proceedings.

In October 2002, Trepel sought an order of attachment and

---

[2] The law firm Beldock Levine & Hoffman, LLP is sued incorrectly in the caption to this case.

2

restraining order to prevent Diop from sequestering his assets and fleeing the jurisdiction. At that time, Diop was not permitted to remove his possessions from his apartment without the permission of an authorized agent of his apartment tower. Employees of the apartment tower were not to give such permission without legal assurances that there were no legal impediments to the removal of Diop's possessions.

The salient portion of the transcript of the October 28, 2002 hearing before the Honorable Gerard E. Lynch indicates that Judge Lynch expressed a concern that if the civil action were stayed pending resolution of the criminal action, it would be necessary "to guarantee . . . that [Trepel] is going to be able to collect if he wins," particularly as "it could be quite a long time before plaintiff actually gets any judgment he might be entitled to." Dippold attempted to allay Judge Lynch's concerns by stating that

> [t]he district attorney has taken certain steps that I think provide the plaintiff with protection here. The passport has been turned over and is being held by the district attorney. The co-op apartment . . . is currently the proprietary lease, the original stock certificate is also held by the district attorney. There have been three search warrants executed at the apartment owned by the defendant. <u>The defendant has been instructed that under no circumstances is he to remove anything from these apartments</u> . . . .

(Emphasis supplied.) Trepel's counsel stated that while "we would be happy with a full attachment on the apartment alone," he would also require "some sort of restraining order." He continued:

3

> We can understand you need to liquidate assets for living and normal expenses and counsel fees. . . . What we don't want to happen is liquidating and disappearing these assets to a foreign country.

Judge Lynch responded to the request for a restraining order, stating:

> Yes. I think that seems reasonable. If the order only restrains the defendant from liquidating assets but authorizes him to use assets for the payment of attorneys and for ordinary living expenses, I can't see how anyone can object to that and the parties should be able to work out, again, an appropriate wording for such an order for me to sign.

Once plaintiff and defense counsel created a proposed attachment and restraining order to memorialize the contents of the discussion held on the record on October 28, Judge Lynch executed the order on November 13.[3] The order states, among other things, that Diop is

> enjoined and restrained from selling, liquidating, disposing, conveying, sequestering, . . . or transferring -- in any manner whatsoever -- any of his other personal assets, except that [he] shall have leave to expend from his personal assets such sums of money as may be reasonably necessary to pay basic living expenses . . . [and] reasonable attorney's fees . . . .

The Complaint alleges that while Dippold and Trepel's attorney were devising language to include in the proposed attachment and restraining order, Dippold secretly sent a letter to Diop's apartment tower superintendent, with a copy to Diop, stating that there was no police interest in Diop's possessions. Indeed, Dippold sent a letter dated November 1, 2002 to the

---

[3] A copy of this order is attached to the defendants' motion papers.

4

superintendent of Diop's apartment building on East 54th Street in Manhattan.[4]  This letter states:

> We are attorneys for Mourtala Diop . . . , and have been representing him in connection with the matter involving the search warrant executed at your premises. In that matter we have represented Mr. Diop in court and have been in regular communication with the Assistant District Attorney in charge, Daniel Zambrano.
>
> We provide this letter to assure that we have consulted with ADA Zambrano and that he has represented to us that the personal property at Mr. Diop's apartment has not been seized.  Therefore the search warrant proceedings do not prevent Mr. Diop from removing such property as he wishes from his apartment.

The letter indicates that it was also carbon-copied to Diop.

The Complaint alleges that Dippold wrote and sent this letter for the express purpose of causing the superintendent to allow Diop to remove his belongings from the apartment and hide them in a place known only to himself, thereby frustrating the purposes of the order contemplated by Judge Lynch at the October 28 hearing and substantially compromising Trepel's ability to collect any judgment he might obtain against Diop.  As a result of Dippold's letter, the superintendent permitted Diop to remove and sequester all of Diop's valuable possessions from the apartment for a number of weeks in violation of Judge Lynch's contemplated order as stated on October 28 and as executed on November 13.

Diop then fled the District, and despite the issuance of

---

[4] This letter is attached to the defendants' motion papers but occupies a central role in Trepel's Complaint.  The Complaint refers to the letter as "dated November 3, 2002, but actually written a few days earlier."

5

state and federal warrants for his arrest, he has not been apprehended. None of his sequestered property has been recovered or located. Judge Lynch entered a default judgment on behalf of Trepel against Diop in the amount of $940,694.53 plus interest until paid. Diop's apartment was later sold in a sheriff's sale for $150,000, leaving a deficiency in Trepel's recovery of $790,694.53 plus interest until paid. The Complaint alleges that the valuable artwork in Diop's apartment before Diop removed it and fled had sufficient value to satisfy this deficiency.

The Complaint contains four causes of action. First, Trepel alleges intentional misrepresentation by Dippold at the October 28 hearing. Trepel also alleges negligent misrepresentation in the alternative. Second, Trepel alleges that Dippold aided and abetted the violation of a federal restraining order. Third, Trepel alleges a violation of Section 487, New York Judiciary Law, which prohibits attorney misconduct. Fourth, Trepel alleges professional negligence against the Hodgson Firm for allegedly failing to follow Trepel's instructions to notify Diop's apartment building about the restraining order described at the October 28 hearing.

**DISCUSSION**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P. Pleadings are to give "fair notice" of a claim and "the grounds upon which they rest" in order to enable

6

the opposing party to answer and prepare for trial, and to identify the nature of the case. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). "The federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003) (citation omitted).

Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "extensive pleading of facts is not required." Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (citation omitted). If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. Swierkiewicz, 534 U.S. at 514. In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

In addition to the pleadings, the court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). A court may take judicial notice of a public record pursuant to Rule 201(b), Fed. R. Evid. Rothman v. Gregor,

7

220 F.3d 81, 92 (2d Cir. 2000).

New York Judiciary Law § 487

Trepel's third cause of action is based on New York Judiciary Law § 487, which provides that

> An attorney or counselor who:
> 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
> 2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Jud. Law § 487 (McKinney 2005) (emphasis supplied). Judiciary Law § 487 was passed in its present form in 1965, and replaced former Penal Law of 1909 Section 273. Lazer Elec. Corp. v. Cecchi, No. 97 Civ. 130 (DLC), 1997 WL 311925, at *3 (S.D.N.Y. June 10, 1997). Judiciary Law § 487 supports a civil action by a party to a litigation against the attorneys representing parties in the litigation, for any deceit or collusion practiced within New York's territorial borders on either the court or "any" party, and provides for a treble damage award in such an action. Schertenleib v. Traum, 589 F.2d 1156, 1166 (2d Cir. 1978); Lazer, 1997 WL 311925, at *3.

While decisions applying Section 487 frequently repeat the observation that a violation requires proof that the defendant attorney "engaged in a chronic, extreme pattern of legal

8

delinquency," Schindler v. Issler & Schrage, P.C., 692 N.Y.S.2d 361, 362 (1st Dep't 1999) (citation omitted),[5] neither the language of the statute nor the holdings of several decisions applying Section 487 impose any such requirement. A single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability. But see Savitsky v. Mazzella, No. 98 Civ. 9051 (RWS), 2004 WL 2454120, at *5 (S.D.N.Y. Nov. 1, 2004); Havell v. Islam, 739 N.Y.S.2d 371, 372 (1st Dep't 2002); Gonzalez v. Gordon, 649 N.Y.S.2d 701, 702 (1st Dep't 1996). For instance, in Schindler, the attorney requested and received a declaratory judgment that his client was the sole owner of funds in a bank account without advising the New York court of the existence of an Arizona court order that restricted access to those funds. Schindler, 692 N.Y.S.2d at 362-63. Similarly, in Guardian Life Ins. Co. of America v. Handel, 596 N.Y.S.2d 804 (1st Dep't 1993), the plaintiff's attorney withheld from the court the fact that an embalming certificate was a fraud, even though that certificate was critical to his request for a declaratory judgment that the insurance carrier's autopsy demand was unreasonable. Id. at 806. In Fields v. Turner, 147 N.Y.S.2d 542 (N.Y. Sup. Ct. 1955), procuring an arrest warrant from the domestic relations court through the submission of an affidavit with fake information was

---

[5] The phrase "chronic, extreme pattern of legal delinquency" was apparently coined by Wiggin v. Attorney Anonymous, 115 Misc.2d 1071, 1077 (N.Y. City Civ. Ct. 1982), and has been repeated without analysis since that time.

sufficient to state a claim. Id. at 544. Finally, in Olshansky v. Sutton, No. 00 Civ. 3539 (LAP), 2001 WL 99857 (S.D.N.Y. Feb. 6, 2001), an attorney petitioned for permission to sell stock without revealing to the court that another person had asserted a claim to the stock. Id. at *4.

Accepting all factual allegations in the Complaint as true, and drawing inferences in the light most favorable to the plaintiff, Trepel has stated a claim under Section 487. At a time when the District Court expressed an intent to issue an order restraining Diop from liquidating his assets, and Dippold acknowledged on the record that Diop was under instructions not to remove any personal possessions from his apartment, Dippold allegedly colluded with her client to manipulate the superintendent into permitting Diop to remove and liquidate his valuables. This would constitute deceit and collusion practiced on both the District Court and the plaintiff with an intent to deceive them both. The deceit and collusion would have become even more egregious at the point when Dippold and Trepel's counsel jointly submitted a proposed restraining order for the District Court to execute, while Dippold knew that Diop was, at that very moment, violating the order's terms with impunity and with Dippold's assistance.

Dippold argues that Trepel has no standing to raise a claim based on Section 487 because the statute requires the plaintiff to allege an attorney-client relationship between himself and Dippold. Dippold is wrong. The plain text of Subsection 1 of

10

Section 487 requires an intent to deceive "any party" and provides for treble damages for "the party injured." N.Y. Jud. Law § 487 (McKinney 2005) (emphasis supplied). By contrast, Subsection 2 of Section 487 explicitly applies to an attorney who "[w]ilfully delays his client's suit." Id. (emphasis supplied). Section 487 claims have been routinely upheld when brought against an adversary's counsel. See Handel, 596 N.Y.S.2d at 806-07; Fields, 147 N.Y.S.2d at 544.

The cases Dippold cites on this point do not require a contrary conclusion. Rogath v. Koegel, No. 96 Civ. 8729 (DAB), 1998 WL 695668 (S.D.N.Y. Oct. 6, 1998), describes Section 487 as one of a series of "assorted legal malpractice claims," id. at *2 n.4, and then collectively dismisses those claims in a footnote without any analysis of the requirements of Section 487, id. at *4 n.10. Aglira v. Julien & Schlesinger, P.C., 631 N.Y.S.2d 816 (1st Dep't 1995), is a generic legal malpractice case, and does not involve Section 487. Mecca v. Shang, 685 N.Y.S.2d 458, 459 (2d Dep't 1999), dismissed the Section 487 claim of a litigant's wife on the ground that she was not a party to the prior proceeding. Finally, Olshansky, 2001 WL 99857, at *4, held that even a non-party could raise a Section 487 claim provided that he alleged a fiduciary relationship, id., but did not hold that a fiduciary relationship is required for a party to raise such a claim.

Dippold also argues that Trepel only alleges one bad act, and that this cannot meet the "chronic, extreme pattern of legal

11

delinquency" standard. The conduct alleged in the Complaint supports the notion that Dippold engaged in an ongoing practice of deception and collusion -- the alleged bad acts extend well beyond a single statement at the October 28 hearing. In any event, as described above, a single act of deceit undertaken with an intent to deceive will support a claim.

In sum, the Complaint alleges a claim under N.Y. Judiciary Law § 487. The remaining claims against Dippold and the Beldock Firm present alternate grounds for recovery. Since the presence of these claims will not affect the scope of discovery, it is unnecessary to address their sufficiency in the context of this motion to dismiss. Defendants may renew their arguments relating to the remaining claims in a motion for summary judgment or a motion <u>in limine</u> if appropriate.

## CONCLUSION

The motion to dismiss brought by Dippold and the Beldock Firm is denied.

SO ORDERED:

Dated: New York, New York
May 9, 2005

_____
DENISE COTE
United States District Judge