UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MARTIN TREPEL,                          :
                                        :
                    Plaintiff,          :
                                        :
          -v-                           :
                                        :
KAREN DIPPOLD, an individual; BELDOCK   :
LEVINE & HOFFMAN LLP, a New York Co-    :
Partnership,                            :        04 Civ. 8310 (DLC)
                                        :
                    Defendants/Third-   :        OPINION AND ORDER
                    Party Plaintiffs    :
                                        :
          -v-                           :
                                        :
HODGSON RUSS, a New York Co-            :
Partnership, AIDEN J. McCORMACK, an     :
individual; and P. DAVID PALMIERE, an   :
individual,                             :
                                        :
                    Third-Party         :
                    Defendants.         :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Andrew J. Maloney, III
Brian J. Alexander
Hilary B. Taylor
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017

For Defendants Karen Dippold and
Beldock Levine & Hoffman LLP:
Ronald C. Minkoff
Madhu R. Goel
Frankfurt Kurnit Klein & Selz, P.C.
488 Madison Avenue, 9th Floor
New York, New York  10022

For Third-Party Defendants Hodgson
Russ, LLP and Aiden McCormack:
Michael Brady
69 Delaware Avenue, Suite 1010
Buffalo, New York 14202

DENISE COTE, District Judge:

Plaintiff Martin Trepel ("Trepel") was the plaintiff in a prior federal civil action for fraud in this district brought against African art dealer Mourtala Diop ("Diop").  Trepel obtained a default judgment against Diop, but has seen only a part of the total judgment satisfied because Diop fled the district with most of his possessions and has not been located. Trepel has now filed suit against Diop's counsel Karen Dippold ("Dippold") and Dippold's law firm Beldock Levine & Hoffman LLP ("Beldock Firm"), claiming that Dippold assisted Diop in fleeing the jurisdiction with his assets, thus violating a restraining order and depriving Trepel of the opportunity to recover his damages.  The defendants Dippold and the Beldock Firm brought third-party claims against the attorneys who represented Trepel in the underlying action, P. David Palmiere ("Palmiere"), Aidan McCormack ("McCormack"), and the law firm Hodgson Russ, LLP ("Hodgson Firm"), for contribution based on legal malpractice.

Dippold and the Beldock Firm have moved for summary judgment against Trepel on all claims.  Trepel has moved for partial summary judgment against the defendants on three of their defenses.  McCormack and the Hodgson Firm have moved for summary judgment against the defendants on all claims.  For the following reasons, defendants' motion is granted in part and denied in part, plaintiff's motion is denied, and third-party defendants' motion is denied.

## Background

The following facts are not in dispute or are taken in the
light most favorable to the party opposing summary judgment,
unless otherwise noted.  Plaintiff Trepel, a resident and citizen
of Florida,[1] filed suit against Diop, a citizen of Senegal, on
September 24, 2002 in the Southern District of New York for fraud
stemming from Diop's sale of African tribal artwork to Trepel.
Trepel alleged that reports assessing the authenticity of the
artwork had been altered to hide the fact that the artwork was
not as old as claimed, and that had he been aware of the true age
and condition of the artwork, he would not have purchased it.
Trepel paid Diop approximately $240,000 for the artwork, which
Trepel alleged was essentially without value.  Trepel
subsequently filed a criminal complaint with the New York City
Police Department, and Diop was arrested and later released on
bail.  Dippold and the Beldock Firm represented Diop in both the
civil and the criminal matters.

In connection with the police investigation of the criminal
complaint, the police executed a search warrant on Diop's
cooperative apartment.  Diop's art collection was stored in the
apartment.  After Diop was released on bail on October 23, 2002,
he was prevented from returning to his apartment by the Assistant
District Attorney assigned to the case, Daniel Zambrano ("ADA

---

[1] Defendants do not admit Trepel's Florida citizenship in
their 56.1 Statement, but point to no evidence to suggest
otherwise.

Zambrano"). The police department was going to execute another search warrant on the apartment, and they did not want Diop removing any of his possessions from the apartment. The following day, Dippold faxed a memo to ADA Zambrano asking for guidance regarding the cooperative apartment owned by Diop and another apartment rented by him, such as whether Diop could enter and occupy his apartments and "mov[e] household items during the course of performing the basic daily activities." Specifically, Dippold asked ADA Zambrano whether the "apartments and the contents therein are considered to be 'seized property.'" ADA Zambrano left a voicemail message on October 25, informing Dippold that the items were not considered seized.

In the meantime, on October 17, 2002, by an Order to Show Cause filed in this district, Trepel sought an order of attachment and restraining order on Diop's cooperative apartment and other assets. Dippold sought an adjournment of the hearing by letters dated October 18 and October 23, stating in both that Diop's apartment and assets had been seized by the police department. At a hearing held on October 28 before the Honorable Gerard E. Lynch, Dippold and her husband and colleague Myron Beldock ("Beldock") appeared on Diop's behalf. Dippold and Beldock opposed the attachment for various reasons, including the fact that there was "a seizure order from the criminal case which basically doesn't allow him to do anything."[2] Neither Dippold

---

[2] Defendants suggest that statements made by Beldock during the hearing cannot be used against the defendants Dippold and the

nor Beldock mentioned in the hearing or afterwards ADA Zambrano's directive that Diop's assets were not "seized."  Judge Lynch found little prejudice to Diop from an attachment because "everything has been seized already," and ordered an attachment of Diop's apartment.  As for the rest of the assets, Judge Lynch directed the attorneys to return with an appropriately worded order that would restrain Diop's assets other than those necessary for living expenses and legal fees.  The parties ultimately could not agree on language, and on November 13, Judge Lynch signed an order of attachment of his own.

In addition, in late October 2002, Diop was prevented from scheduling a move-out date from his apartment by the building superintendent Rudy Bachraty ("Bachraty") based on Bachraty's understanding that the contents of Diop's apartment had been seized by the District Attorney's Office.  On November 1, Dippold sent a letter to Bachraty assuring him that ADA Zambrano had told

---

Beldock Firm, because Beldock is not an individual defendant in this case, and Trepel's attempt to add Beldock as a defendant has been expressly disallowed.  Trepel v. Dippold, 04 Civ. 8310 (DLC), 2006 WL 1359964 (S.D.N.Y. May 18, 2006).  Statements made by Beldock in the hearing, however, are relevant and admissible in the case against Dippold and the Beldock Firm.  Dippold was present at the hearing, and Beldock was representing Diop with Dippold.  Beldock's statements in Dippold's presence are Dippold's admissions by adoption.  Rule 801(d)(2)(B), Fed. R. Evid.; see also Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004).  Statements made by Beldock in his representation of Diop can be imputed to the Beldock Firm.  Rule 801(d)(2)(C), (D), Fed. R. Evid.; see also Niagara Mohawk Power Corp. v. Freed, 719 N.Y.S.2d 789, 790 (App. Div. 2000); Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro, 590 N.Y.S.2d 201, 202 (App. Div. 1992).

her that Diop's personal property was not being seized and that
the "search warrant proceedings do not prevent Mr. Diop from
removing such property as he wishes from his apartment."[3]  The
letter made no reference to the attachment hearing before Judge
Lynch.  Over several days in mid to late November, after Judge
Lynch had signed the order of attachment, Diop moved all of his
property out of the apartment.

Judge Lynch's order of attachment required Diop to provide
an accounting of all sums expended for living expenses and
attorney's fees by the 15th of each month.  On December 6, Diop
informed Dippold that he had shipped his three luxury vehicles to
Africa, but that he would bring the proceeds back to the United
States.  It was later discovered that the vehicles had already
been shipped out on November 29.  Dippold did not inform Judge
Lynch or Trepel's counsel that she had just learned that Diop had
violated the November 13 attachment order, but did report the
$15,000 shipping expenses Diop incurred in shipping the cars to
Africa in the monthly accounting, which was provided on December
13.  In the meantime, on December 4, Trepel amended his complaint
in the Diop lawsuit to include other pieces of artwork previously
purchased from Diop, for a total of over $700,000.  Diop failed
to appear for a scheduled court date on January 8, 2003.  Trepel
obtained a default judgment against Diop on February 19, in the

---

[3] Bachraty asserts that Dippold also called him to discuss
the matter before sending him the letter.  Dippold claims to have
no recollection of the telephone conversation.

6

amount of $940,694.53.  The defendants opposed the default
judgment by arguing that the sales between Diop and Trepel had
been illegal contracts.  Defendants did not dispute the amount of
damages, however, and no inquest was conducted before default was
entered.

Following entry of the default judgment, Judge Lynch ordered
the sale of Diop's apartment at a public auction.  The first sale
was scheduled for July 2, 2003, and because it was a sale of
personalty in the form of co-op shares rather than real estate,
the Sheriff's office advised that it would not post notice of the
sale and would only provide one day's notice by publication in
one newspaper.  The first sale was adjourned in order to allow
Trepel and the apartment's co-op board to discuss the sale,
because the co-op board took the position that the Sheriff's sale
might be invalid if the co-op board did not approve it.[4]  Trepel
then directed his attorneys not to provide information about the
rescheduled sale to other potential bidders.[5]

On August 1, 2003, Trepel entered into an agreement with the
co-op board, which provided that if Trepel were the successful

_____

[4] Plaintiff has not responded to the evidence regarding the
sheriff's sale except to claim that the facts are contested.
Where the plaintiff has failed to provide any evidentiary support
for a contrary finding, all of the facts set forth in defendants'
56.1 statements that are supported by admissible evidence are
deemed admitted for purposes of this summary judgment motion.
See Local Civil Rule 56.1; see also Giannullo v. City of New
York, 322 F.3d 139, 140 (2d Cir. 2003).

[5] Trepel claims he has no recollection of instructing his
attorneys to do so, but does not deny making the statement.

7

bidder at the Sheriff's sale, he would not reside in the apartment, but sell the apartment subject to approval by the co-op board.  A new Sheriff's sale was held on August 8, after one day's notice by publication.  Trepel was the only bidder at the sale and purchased the apartment for $150,000, which was credited against the judgment.  More than one year later, on October 1, 2004, Trepel resold the apartment for $650,000.[6]  After expenses associated with the sale, Trepel kept approximately $585,000.

<u>Procedural History</u>

Trepel filed this action against Dippold, the Beldock Firm, and his own former attorneys' law firm the Hodgson Firm, on October 21, 2004.  Trepel claimed that Dippold had frustrated a restraining order by intentionally facilitating Diop's removal of his assets from the district and depriving Trepel of the opportunity to recover his damages.  The Hodgson Firm was voluntarily dismissed from the action by stipulation on January 18, 2005.  Defendants filed a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., which was denied.  <u>Trepel v. Dippold</u>, 04 Civ. 8310 (DLC), 2005 WL 1107010 (S.D.N.Y. May 9, 2005).

Subsequently, the defendants were permitted to file a third-party complaint pursuant to Rule 14(a), Fed. R. Civ. P., against the Hodgson Firm and two of Trepel's attorneys in the underlying

---

[6] Trepel suggests that he made "repairs" to the apartment before resale, but provides no evidentiary support for this statement.

action against Diop, McCormack and Palmiere.  <u>Trepel v. Dippold</u>,
04 Civ. 8310 (DLC), 2005 WL 2206800 (S.D.N.Y. Sept. 12, 2005).
The defendants claimed that the Hodgson Firm, McCormack, and
Palmiere were negligent in protecting Trepel against the risk
that Diop would attempt to remove his assets from the
jurisdiction, and that this gives rise to a claim for
contribution.  On October 27, 2005, Trepel filed an action
against McCormack, but that action was voluntarily discontinued
on August 14, 2006.  After the close of fact discovery, Trepel
sought to amend the complaint to add Beldock as a defendant, but
his motion was denied.  <u>Trepel</u>, 2006 WL 1359964.

Defendants have moved for summary judgment against Trepel on
all claims raised by Trepel in his complaint.  Trepel has moved
for partial summary judgment against the defendants on three of
their defenses regarding the calculation of damages.  Third-party
defendants the Hodgson Firm and McCormack have moved for summary
judgment against the defendants on all claims.  At this time, no
motions have been filed by third-party defendant Palmiere.


<u>Discussion</u>

Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  The
moving party bears the burden of demonstrating the absence of a
material factual question, and in making this determination the

court must view all facts in the light most favorable to the
non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
When the moving party has asserted facts showing that the
non-movant's claims cannot be sustained, the opposing party must
"set forth specific facts showing that there is a genuine issue
for trial," and cannot rest on the "mere allegations or denials"
of the movant's pleadings.  Rule 56(e), Fed. R. Civ. P.; <u>accord</u>
<u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006).

I. Dippold and the Beldock Firm's Motion for Summary Judgment
Against Trepel

A. New York Judiciary Law § 487

Trepel brings a claim against Dippold and the Beldock Firm
under Section 487 of the New York Judiciary Law,[7] claiming that
Dippold assisted Diop in absconding from the jurisdiction with
assets, thus violating a written attachment and restraining order
issued by Judge Lynch and frustrating the enforcement of Trepel's
judgment against Diop.  Section 487 provides for criminal
liability and a private civil action for treble damages against a
lawyer who is "guilty of any deceit or collusion, or consents to
any deceit or collusion, with intent to deceive the court or any
party."  N.Y. Judiciary Law § 487.  "A violation . . . may be

_____

[7] All parties have relied on New York law to defend their
claims.  The parties having consented, that consent is sufficient
to end the choice of law inquiry.  <u>See</u> <u>3Com Corp. v. Banco do</u>
<u>Brasil, S.A.</u>, 171 F.3d 739, 743 (2d Cir. 1999).

established either by the defendant's alleged deceit or by an
alleged chronic, extreme pattern of legal delinquency by the
defendant." Izko Sportswear Co. v. Flaum, 809 N.Y.S.2d 119, 122
(App. Div. 2006) (citation omitted).  While "one arguable
misrepresentation" may not be sufficient to sustain a Section 487
claim, Solow Mgmt. Corp. v. Seltzer, 795 N.Y.S.2d 448, 448 (App.
Div. 2005), "[a] single act or decision, if sufficiently
egregious and accompanied by an intent to deceive, is sufficient
to support liability." Trepel, 2005 WL 1107010, at *4; see also
Amalfitano v. Rosenberg, 428 F. Supp. 2d 196, 207 (S.D.N.Y.
2006).  In addition, "the attorney's deceit must have caused the
plaintiff's damages." Cresswell v. Sullivan & Cromwell, 771 F.
Supp. 580, 587 (S.D.N.Y. 1991); see also Amalfitano, 428 F. Supp.
2d at 207.

     Defendants claim that Trepel has failed to show deceit or
collusion and causation sufficient to sustain a Section 487
claim.  "[S]ummary judgment is generally inappropriate where
questions of intent and state of mind are implicated." Gelb v.
Bd. of Elections of N.Y., 224 F.3d 149, 157 (2d Cir. 2000); see
also Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir.
2006) (noting that where contractual language is ambiguous,
"intent becomes an issue of fact and summary judgment is
inappropriate").  Dippold sent letters to Judge Lynch prior to
the attachment hearing, indicating that Diop's assets had been
seized by the District Attorney's office.  Despite learning from
ADA Zambrano on October 25 that the assets were not restrained,

11

during the October 28 hearing, Dippold and her colleague Beldock continued to make representations that the assets were seized. Moreover, having made representations to Judge Lynch in her October 18 and October 23 letters, Dippold had a duty to correct the record.  "It is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment, which is itself the equivalent of affirmative misrepresentations of fact.  This is especially true where an officer of the court owes such an obligation to the tribunal."  Schindler v. Issler & Schrage, 692 N.Y.S.2d 361, 363 (App. Div. 1999) (citation omitted).

Trepel offers further evidence of an intent to deceive based on Dippold's early knowledge that Diop may flee,[8] and from Dippold's delay in notifying the court of the fact that Diop had shipped out his luxury vehicles.  While "mere incantation of intent or state of mind" does not "operate as a talisman to defeat an otherwise valid motion," Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 125 (2d Cir. 2001), Trepel has presented evidence sufficient to create an issue of material fact on the issue of intent amounting to deceit or collusion.

---

[8] Trepel points to a conversation between a friend of Diop's and Dippold, where the friend suggests that once released on bail, Diop would flee the jurisdiction.  Dippold does not recall the conversation and in any event disputes the characterization of Diop as a flight risk.  For purposes of defendants' motion for summary judgment, the evidence is viewed in the light most favorable to the plaintiff.

Trepel has also offered evidence to support a finding of causation, a similarly fact-intensive issue.  The evidence supports an inference that Judge Lynch would have issued an attachment order earlier and Trepel's attorneys may have acted differently had Dippold and Beldock not made misrepresentations during the attachment hearing or had Dippold not delayed in reporting Diop's car shipments.  Viewed in the light most favorable to the party opposing this summary judgment motion, Trepel has presented more than sufficient evidence to create issues of fact to withstand summary judgment.

B. Intentional Misrepresentation

Defendants move for summary judgment on Trepel's claim of intentional misrepresentation.  They assert that Trepel was not justified in relying on their statements to Judge Lynch, and that their statements to Bachraty cannot support a claim.

"Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (citation omitted).  "[J]ustifiable reliance will not be found in cases in which plaintiff was placed on guard or practically faced with the facts."  Hyosung Am., Inc. v. Sumagh Textile Co., 137 F.3d 75, 78 (2d Cir. 1998) (citation omitted).  Whether Trepel was justified

13

in relying upon Dippold's statements to the court at the
attachment hearing is a fact question that cannot be resolved on
summary judgment.

In New York, fraud "may . . . exist where a false
representation is made to a third party, resulting in injury to
the plaintiff." Buxton Mfg. Co. v. Valiant Moving & Storage,
Inc., 657 N.Y.S.2d 450, 451 (App. Div. 1997).  In order to
establish fraud based on misrepresentations directed at a third
party, however, plaintiff must "establish that he relied upon it
to his detriment, and that the defendants intended the
misrepresentation to be conveyed to him." Cement & Concrete
Workers Dist. Council Welfare Fund v. Lollo, 148 F.3d 194, 196
(2d Cir. 1998); see also Sec. Investor Protection Corp. v. BDO
Seidman, LLP, 222 F.3d 63, 71-72 (2d Cir. 2000).  Trepel does not
suggest that he was aware of the contents of Dippold's letter to
the co-op board or acted in reliance upon that letter.  Summary
judgment is granted in favor of defendants on Trepel's
intentional misrepresentation claim to the extent that it is
based on the letter Dippold sent to Bachraty.


C. Negligent Misrepresentation

Defendants move for summary judgment on the claim for
negligent misrepresentation on the ground that they owed no duty
to Trepel.  Negligent misrepresentation requires, in addition to
carelessness, reliance, causation, and damages, that "the
declarant must express the words directly, with knowledge or

14

notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003).  Whether such a "special relationship" exists is generally an issue of fact, Kimmell v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996), but the relationship required generally needs to amount to "actual privity of contract between the parties or a relationship so close as to approach that of privity." Parrott v. Coopers & Lybrand, L.L.P., 741 N.E.2d 506, 508 (N.Y. 2000) (citation omitted).  While "professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients," Murphy v. Kuhn, 682 N.E.2d 972, 974 (N.Y. 1997) (citation omitted), "[a]n attorney does not owe a duty of care to his adversary." Aglira v. Julien & Schlesinger, P.C., 631 N.Y.S.2d 816, 819 (App. Div. 1995).  Only in limited circumstances, such as those involving fraud, malicious acts, or where there is privity or something close to it, are attorneys liable to parties who are not their clients.  Pope v. Rice, 04 Civ. 4171 (DLC), 2005 WL 613085, at *10-11 (S.D.N.Y. Mar. 14, 2005).

As attorneys for Trepel's adversary, Dippold and the Beldock Firm cannot be held liable for negligent misrepresentation to Trepel.  Summary judgment is granted in favor of defendants on Trepel's claim for negligent misrepresentation.

15

D. Aiding and Abetting the Violation of a Court Order

Defendants assert that Trepel's claim of aiding and abetting the violation of Judge Lynch's court order is procedurally improper because it was not brought as part of a contempt proceeding before Judge Lynch.  "Before a party can be found guilty of aiding and abetting civil contempt, the court must find: (1) that the party subject to the court's mandate committed contempt; and (2) that another party assisted the enjoined party." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002).  This inquiry is separate from the contempt proceeding itself, and claims for aiding and abetting a violation of court orders have been entertained in courts other than the original court issuing the order.  See id. at 246 (considering an aiding and abetting claim filed in federal court arising from a violation of a consent order entered in state court).

Defendants also claim that because the order of attachment was not finalized in writing until November 13, their actions before November 13 -- such as the representations at the October 28 hearing and the November 1 letter to Bachraty -- cannot constitute acts of aiding and abetting a contempt.  Diop's ultimate violation of the court order -- moving his possessions out of the jurisdiction -- occurred on or after November 13. Trepel has presented sufficient evidence to support a finding that the defendants aided and abetted contempt of a court order.

II. Trepel's Motion for Partial Summary Judgment Against Dippold
and the Beldock Firm

A. Judgment Offset for Purchase and Resale of Diop's Apartment

Trepel argues that the offset for any judgment he obtains
against the defendants should be the amount he paid to purchase
the apartment, $150,000, and not the $650,000 he received when he
resold the apartment.  Defendants claim that the offset must be
the apartment's fair market value, or Trepel will have received
double recovery.

New York courts recognize the "injustice of permitting a
judgment creditor to reap a double or multiple recovery from his
debtor." Mikulec v. United States, 705 F.2d 599, 602 (2d Cir.
1983).  Where the debtor's real property is executed against,
judgments are offset by the "reasonable or fair market value of
the property at the time of sale."  Yellow Creek Hunting Club,
Inc. v. Todd Supply, Inc., 535 N.Y.S.2d 222, 223 (App. Div.
1988); see also Wandschneider v. Bekeny, 346 N.Y.S.2d 925, 930-31
(Sup. Ct. 1973).  These same equitable principles apply to the
defendants, even though they are not the judgment debtor.  The
defendants are being sued for the same economic loss, namely the
deficiencies in collecting on the judgment entered against the
debtor.

In addition, the judgment should be offset by the fair
market value of the apartment shares because of the duty imposed
on the plaintiff to mitigate damages.  "As a general rule, a
party who claims to have suffered damage by the tort of another

17

is bound to use reasonable and proper efforts to make the damage as small as practicable." De La Concha v. Fordham Univ., 814 N.Y.S.2d 320, 321 (App. Div. 2006) (citation omitted).  While it is true that the duty to mitigate does not apply to intentional injuries where there is malice and willful intent to injure, Den Norske Ameriekalinje Actiesselskabet v. Sum Printing & Publ'g Ass'n, 122 N.E. 463, 465 (N.Y. 1919); see also Ridgeview Partners, LLC v. Entwistle, 354 F. Supp. 2d 395, 402-03 (S.D.N.Y. 2005), it would be "equally unjust . . . to allow and encourage the [judgment creditor] to intentionally increase his damages," Clark Operating Corp. v. Yokley, 466 N.Y.S.2d 204, 205 (Civ. Ct. 1983); cf. Restatement (Second) of Torts § 918(2).  It is undisputed that Trepel instructed his attorneys to keep the date of the Sheriff's sale a secret, and the sale was not widely publicized.  Moreover, the sale of the shares to Trepel was an accommodation and not an arms-length sale.  Offsetting the judgment only by the amount Trepel paid in an unchallenged, unpublicized bid would constitute an unfair windfall. Plaintiff's motion for summary judgment on the defendants' defense regarding the offset is denied.


B. Merits and Value of Underlying Default Judgment Amount

     Trepel seeks summary judgment dismissing defendants' defenses[9] that seek to establish at trial the value of the

_____

     [9] The defendants argue that their defenses are not "affirmative" defenses because they go to the element of damages,

18

property Diop sold to Trepel.  Trepel claims the amount of his

damages were determined through the default judgment entered

against Diop, and the defendants are prevented from relitigating

the issue by either res judicata or collateral estoppel.

Federal principles of collateral estoppel apply to prior

federal judgments, and require that

> (1) the identical issue was raised in a previous
> proceeding; (2) the issue was actually litigated and
> decided in the previous proceeding; (3) the party had a
> full and fair opportunity to litigate the issue; and
> (4) the resolution of the issue was necessary to
> support a valid and final judgment on the merits.

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)

(citation omitted).  "The law is well established that a default

judgment is deemed as conclusive an adjudication of the merits of

an action as a contested judgment."  Norex Petrol. Ltd. v. Access

Indus., Inc., 416 F.3d 146, 160 (2d Cir. 2005).  In general,

however, "collateral estoppel forecloses only those issues that

have been actually litigated and determined in a prior action,

and an issue is not actually litigated if there has been a

default."  Yoon v. Fordham Univ. Faculty & Admin. Retirement

Plan, 263 F.3d 196, 202 n.7 (2d Cir. 2001) (citation omitted).

---

which is the plaintiff's burden to prove.  Cf. Nat'l Market
Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 526-27 (2d Cir.
2004) (finding that intervening cause is not an affirmative
defense because causation is an element for which plaintiff has
burden).  Affirmative defenses "rais[e] new facts and arguments
that, if true, [] defeat the plaintiff's . . . claim, even if all
allegations in the complaint are true."  Black's Law Dictionary
430 (7th ed. 1999).  Defendants are not challenging the amount of
the default judgment entered against Diop, but rather are
challenging the amount of Trepel's economic loss.  Thus, their
challenge to the amount of damages is not an affirmative defense.

19

Even if collateral estoppel were available to determine the amount of Trepel's loss, collateral estoppel only applies to a party in a prior proceeding "and that party's privies." Stichting Ter Behartiging v. Schreiber, 327 F.3d 173, 184 (2d Cir. 2003) (citation omitted).  Privity is found if a "nonparty was represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding."  Id. at 185.

Although defendants conducted the prior litigation as attorneys for Diop, their interests were not represented by Diop in that proceeding and they did not exercise "actual control" over the positions Diop asserted in the litigation.  Privity is not created here by the existence of an attorney-client relationship.  Therefore, Trepel's motion for summary judgment striking the defendants' defenses on the value of the property purchased by Trepel is denied.


III. McCormack and the Hodgson Firm's Motion for Summary Judgment Against Dippold and the Beldock Firm
A. Causation

Third-party defendants McCormack and the Hodgson Firm seek summary judgment on the claims for contribution filed by the defendants based on the theory that McCormack and the Hodgson Firm engaged in malpractice.  McCormack and the Hodgson Firm argue that there is no evidence that any malpractice on their part caused Trepel's loss.  They argue that even if they had

20

warned Bachraty or Diop's co-op board about the impending
attachment order or sought an earlier order from Judge Lynch, it
is too speculative as to whether Bachraty would have prevented
Diop from moving out or Judge Lynch would have issued an earlier
attachment order.

As discussed above, causation is a fact-intensive issue.
The third-party defendants' motion for summary judgment on the
causation issue is denied.


B. Contribution Under New York Judiciary Law § 487

Third-party defendants argue that defendants may not seek
contribution for any damages awarded under Section 487 because
the section provides for treble damages.  Contribution is
available in New York "even in favor of an intentional
wrongdoer."  Durandette v. City of Syracuse Fire Dep't, 661
N.Y.S.2d 117, 118 (App. Div. 1997) (citation omitted); see also
Bd. of Educ. v. Sargent, Webster, Crenshaw & Folley, 517 N.E.2d
1360, 1364 (N.Y. 1987).  But see First Interregional Advisors
Corp. v. Wolff, 956 F. Supp. 480, 489 (S.D.N.Y. 1997).  Punitive
damages, however, "are in the nature of a penalty and
contribution among tortfeasors is not permissible."  Felice v.
Delporte, 524 N.Y.S.2d 919, 920 (App. Div. 1988); see also Rodick
v. City of Schenectady, 1 F.3d 1341, 1349 (2d Cir. 1993).  Treble
damages are often considered punitive; "[t]he very idea of treble
damages reveals an intent to punish past, and to deter future,
unlawful conduct, not to ameliorate the liability of wrongdoers."

21

Vt. Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765, 786 (2000) (citation omitted).  Section 487 has its origins in a criminal statute, Cox v. Microsoft Corp., 737 N.Y.S.2d 1, 3 (App. Div. 2002), and thus its trebled damages provision is appropriately understood to be punitive and does not allow for a contribution claim.

The initial amount of the Section 487 damages, however, before trebling, is compensatory.  See Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co., 588 N.Y.S.2d 982, 985 (Sup. Ct. 1992). Accordingly, the defendants may seek contribution for the initial award of Section 487 damages, before trebling.

## Conclusion

For the above reasons, defendants' motion for summary judgment is granted on the issues of intentional misrepresentation based on Dippold's letter to Bachraty and negligent misrepresentation, and otherwise denied; plaintiff's motion for partial summary judgment is denied; and third party defendants' motion for summary judgment is denied.

SO ORDERED:

Dated:     New York, New York
           October 27, 2006

_____
DENISE COTE
United States District Judge